IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Kenneth Glenn, | ) | C/A No.: 1:17-643-PMD-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Nancy A. Berryhill, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.      Relevant Background

        A.      Procedural History

On April 29, 2014, Plaintiff protectively filed an application for DIB in which he alleged his disability began on June 1, 2013. Tr. at 77 and 156–57. His application was denied initially and upon reconsideration. Tr. at 93–96 and 102–07. On April 28, 2016,

Plaintiff had a hearing before Administrative Law Judge ("ALJ") Jerry W. Peace. Tr. at 43–68 (Hr'g Tr.). The ALJ issued an unfavorable decision on July 14, 2016, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 27–42. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–7. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on March 8, 2017. [ECF No. 1].

B.     Plaintiff's Background and Medical History

1.     Background

Plaintiff was 56 years old at the time of the hearing. Tr. at 48. He completed high school and obtained a welding certificate. Tr. at 49. His past relevant work ("PRW") was as a hand packager. Tr. at 63. He alleges he has been unable to work since June 1, 2013. Tr. at 156.

2.     Medical History

Plaintiff presented to the emergency room at Spartanburg Regional Medical Center on June 1, 2013, after having been assaulted. Tr. at 293. He reported he had twisted his ankle during the altercation and complained of left ankle pain. Tr. at 290. X-rays showed extensive comminuted fractures of Plaintiff's left distal tibia and fibula. Tr. at 290. The attending physician diagnosed closed fractures to the tibia and fibula, facial laceration, and alcohol abuse. Tr. at 289. He applied a cast, prescribed Hydrocodone-Acetaminophen for pain, and instructed Plaintiff to ambulate with crutches and to follow up with an orthopedist. *Id.*

John Scott Broderick, M.D. ("Dr. Broderick"), performed spanning internal fixation of Plaintiff's left distal tibia and fibula on June 3, 2013. Tr. at 294–95. He drained several blisters on the medial side of Plaintiff's left ankle and noted soft tissue swelling. Tr. at 294. A post-operative computed tomography ("CT") scan revealed a comminuted fracture of the distal tibia and fibula. Tr. at 296. Dr. Broderick indicated he planned to perform open reduction and internal fixation ("ORIF") surgery after Plaintiff's soft tissue swelling decreased. Tr. at 295.

Plaintiff followed up with Dr. Broderick on June 7, 2013. Tr. at 321. He reported left ankle pain. *Id.* Dr. Broderick observed swelling in Plaintiff's left ankle and noted that the blisters seemed to be "re-accumulating just a little bit." *Id.* He indicated Plaintiff's skin looked "OK" and his pin sites looked excellent. *Id.* He stated Plaintiff had good sensation and range of motion of motion ("ROM") in his knee and was able to wiggle his toes. *Id.* He refilled Hydrocodone-Acetaminophen. Tr. at 323.

On June 11, 2013, Plaintiff reported no complaints. Tr. at 324. His skin and pin sites were intact and he demonstrated full ROM of his knee. Tr. at 325. He had intact sensation and could barely wiggle his toes. *Id.* Dr. Broderick advised Plaintiff to elevate his left leg until after surgery. Tr. at 326.

Dr. Broderick performed ORIF on June 13, 2013. Tr. at 285. He anticipated that Plaintiff would remain immobile for six weeks and non-weight bearing for 12 weeks. Tr. at 287.

On June 18, 2013, Plaintiff reported that he was elevating his leg and doing well. Tr. at 330. Dr. Broderick noted Plaintiff's incisions were intact, aside from a little bloody

drainage. Tr. at 331. He indicated Plaintiff had excellent ROM of his knee and a soft calf. *Id.* He applied a clean dressing, reattached the ankle splint, and instructed Plaintiff to remain non-weight bearing. *Id.*

Plaintiff followed up with Dr. Broderick for suture removal on July 2, 2013. Tr. at 332. He reported no complaints. *Id.* Dr. Broderick observed Plaintiff to have an intact incision, a soft right calf, full ROM of his left knee, and stiffness in his left ankle. *Id.* He removed Plaintiff's sutures and placed him in a short leg cast. Tr. at 333.

On July 30, 2013, Plaintiff reported no complaints and indicated he had not required pain medication. Tr. at 338. Dr. Broderick observed Plaintiff to be neurovascularly intact and to have a soft right calf, full ROM of the left knee, mild stiffness to the left ankle, no effusion, minimal swelling, and a healing incision. *Id.* Plaintiff's ankle abductors were slightly weak, but he had satisfactory ankle motion. *Id.* X-rays showed intact hardware and good alignment, but were not consistent with significant healing. Tr. at 339. Dr. Broderick placed Plaintiff in a removable posterior splint and instructed him to wear while he was awake and to remain non-weight bearing. Tr. at 340.

Plaintiff complained of some ankle pain on September 10, 2013. Tr. at 341. Dr. Broderick noted that Plaintiff was placing a little bit of weight on his left ankle when he ambulated to the bathroom, but was otherwise remaining non-weight bearing. *Id.* He noted slight swelling around the fracture site with no erythema or induration. Tr. at 342. He stated Plaintiff had very limited ankle motion, but was at the neutral position. *Id.* X-rays showed no change. Tr. at 342–43. Dr. Broderick noted that the x-rays did not show

4

the healing he had expected, but indicated good alignment. *Id.* He advised Plaintiff to slowly advance weight bearing with an air splint and referred him for a physical therapy evaluation. Tr. at 343.

Plaintiff reported minor aches and pains and indicated he was fully weight bearing on December 10, 2013. Tr. at 346. He reported occasional left ankle pain and swelling, but denied any significant pain. *Id.* Dr. Broderick observed Plaintiff to demonstrate slightly antalgic gait; good ROM in the left hip and knee; 4+/5 abductors; no effusion; ankle dorsiflexion to neutral; ankle plantar flexion to about 30 degrees; and good sensation to light touch. *Id.* X-rays showed a distal broken screw, but excellent alignment. Tr. at 347. Although, the fracture lines on both the tibia and fibula remained evident, there was increased callus formation. *Id.* Dr. Broderick was concerned about possible non-union of the fractures. Tr. at 348. He ordered a CT scan and refilled Hydrocodone-Acetaminophen. *Id.*

On December 13, 2013, a CT scan of Plaintiff's left ankle showed incomplete healing and partial nonunion of the fractures of the distal tibia and fibula, as well as probable disuse osteopenia changes in the bony structures. Tr. at 307.

On December 17, 2013, Plaintiff was using a cane to ambulate, but indicated he used it as a course of habit and did not require it. Tr. at 353. Plaintiff denied tenderness and swelling and had good strength and ankle motion. *Id.* He indicated no more than minor twinges of pain on occasion and requested that Dr. Broderick release him to return to work. *Id.* Dr. Broderick discussed the CT findings with Plaintiff and recommended bone grafting, but Plaintiff declined additional surgery. Tr. at 355. Dr. Broderick refilled

Plaintiff's prescription for Hydrocodone-Acetaminophen and authorized him to engage in activities as tolerated and to return to work on February 1, 2014. *Id.*

On April 8, 2014, Plaintiff reported that he had returned to work on January 31, 2014. Tr. at 356. He indicated he was tolerating his job, despite the fact that it required he stand on a concrete floor for 12 hours a day. *Id.* He endorsed some discomfort at the end of the workday, but denied any significant ankle swelling and indicated he did not often require pain medication. *Id.* Dr. Broderick observed Plaintiff to have weak left abductors, as compared to those on the right. *Id.* Plaintiff demonstrated good ROM of the left knee and no tenderness. *Id.* He was able to wiggle his toes. *Id.* His light touch sensation was within normal limits. *Id.* He had no swelling at the ankle. *Id.* He was able to dorsiflex to just past the neutral position and to plantar flex 25 to 30 degrees. *Id.* X-rays indicated no change in alignment and showed that Plaintiff's fracture was beginning to consolidate. *Id.* Dr. Broderick refilled Plaintiff's prescription for Hydrocodone-Acetaminophen. *Id.*

On April 29, 2014, Plaintiff initially reported knee swelling and a significant increase in pain. Tr. at 359. He stated that he had recently lost his job. *Id.* Dr. Broderick noted that "[i]t sounds as though he may have lost it due to some issues with a drug test as opposed to his ability or inability to perform his duties." *Id.* He stated that upon further questioning, Plaintiff indicated his leg pain had not really changed. *Id.* Dr. Broderick noted that Plaintiff's ROM, swelling, and pain could be exacerbated by the way his leg was bent. *Id.* He observed that Plaintiff's gait was "maybe slightly antalgic," but "was basically unchanged from previous exams." *Id.* He observed Plaintiff to have good ROM, reasonable swelling, and 5/5 abductors in his left lower extremity. *Id.* Dr. Broderick told

Plaintiff that he felt uncomfortable discussing disability with him because he had returned to work. Tr. at 360. He stated he believed Plaintiff could "work relatively well, may be just a little bit more slowly with his injury." *Id.*

On June 3, 2014, state agency medical consultant Joseph Geer, M.D. ("Dr. Geer"), completed a physical residual functional capacity ("RFC") assessment. Tr. at 72–74. He indicated Plaintiff could occasionally lift and/or carry 50 pounds; could frequently lift and/or carry 25 pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; could frequently kneel, crawl, and climb ladders, ropes, and scaffolds; and should avoid concentrated exposure to hazards. *Id.*

Plaintiff presented to Lisa Sanders, FNP ("Ms. Sanders"), for cramping in his right hand and pain in his left leg and right shoulder and hand. Tr. at 415. He reported some pain relief with use of Aleve. *Id.* He rated his pain as an eight on a 10-point scale and indicated it was exacerbated by rain. *Id.* He complained of weakness, stiffness, and intermittent edema in his left leg. Tr. at 415–16. Ms. Sanders observed Plaintiff to ambulate with a limp, to use a cane, and to have slightly reduced left leg strength at 4/5. *Id.* She indicated Plaintiff had full ROM of his right shoulder. Tr. at 415. She diagnosed osteoarthritis and prescribed Mobic. *Id.*

On July 30, 2014, a second state agency medical consultant, Stephen Burge, M.D. ("Dr. Burge"), completed a physical RFC assessment and assessed the same restrictions as Dr. Geer. Tr. at 86–89.

Ms. Sanders completed a disabled placard and license plate application for Plaintiff on August 11, 2014. Tr. at 243. She stated Plaintiff was unable to ordinarily walk 100 feet nonstop without aggravating an existing medical condition, including the increase of pain. Tr. at 243 and 244. She indicated Plaintiff's disability was permanent. Tr. at 243.

Plaintiff complained of significant left ankle pain on September 16, 2014. Tr. at 425. He reported generalized pain in his ankle and tibia. *Id.* Dr. Broderick observed Plaintiff to walk with a cane and a slight limp. *Id.* He noted that Plaintiff had minimal, if any, swelling in his ankle. *Id.* Plaintiff was able to dorsiflex to the neutral position and had intact knee flexion and extension. *Id.* He had 5/5 abductors on the left and right. *Id.* He had intact sensation to light touch. *Id.* X-rays showed more callus formation and no change in the position of the hardware. *Id.* Dr. Broderick referred Plaintiff for an updated CT scan. Tr. at 427.

On December 29, 2015, Plaintiff reported that his wrist was "doing pretty good" with use of the wrist brace. Tr. at 432. He complained of burning and stinging in his left ankle and foot and rated his pain as an eight on a 10-point scale after having taken medication. *Id.* Ms. Sanders observed Plaintiff to ambulate with a limp and to use a cane. *Id.* She noted 4/5 strength in Plaintiff's left leg. *Id.* Plaintiff demonstrated no edema. *Id.* He had strong and equal bilateral grip strength. *Id.* Ms. Sanders diagnosed arthropathy and right carpal tunnel syndrome; prescribed Gabapentin; and refilled Baclofen and Mobic. Tr. at 432–33.

Plaintiff presented to Ms. Sanders for a recheck of pain in his left leg and right shoulder and hand on March 23, 2015. Tr. at 434. He endorsed numbness in his right hand and pain and stiffness in his right shoulder. *Id.* He indicated his right hand problems were causing him to wake during the night. *Id.* He stated he was taking Aleve and Mobic for pain. *Id.* Ms. Sanders observed Plaintiff to have 4/5 strength in his left leg and to ambulate with a limp. *Id.* She noted full ROM in Plaintiff's right shoulder, but indicated he was slightly stiff with movement of his right shoulder and left leg. *Id.* She diagnosed arthritic-like pain and carpal tunnel syndrome; refilled Baclofen and Mobic; and advised Plaintiff to use a wrist splint. Tr. at 434–35.

On April 15, 2016, Plaintiff presented to Ms. Sanders for examination and completion of disability paperwork. Tr. at 429. Ms. Sanders stated Plaintiff's "[d]isability is related to his left leg." *Id.* She indicated Plaintiff had undergone "3–4 previous surgical interventions" and "ultimately . . . had to have a plate placed into his leg." *Id.* She stated Plaintiff had attempted to work, but was unable to do so because of pain." *Id.* She noted that Plaintiff was ambulating with a cane and had difficulty walking. *Id.* She indicated Plaintiff complained of a burning sensation in his leg and pain in his right hand and was wearing a supportive hand brace. *Id.* She observed Plaintiff to have 4/5 strength in his left leg and to ambulate with a limp. *Id.*

Ms. Sanders provided responses to a clinical assessment of pain form that Plaintiff took to the examination. Tr. at 431. She noted Plaintiff's pain was present to such an extent as to be distracting to adequate performance of daily activities or work. *Id.* She indicated walking, standing, and bending increased Plaintiff's pain to such a degree as to

cause distraction or total abandonment of tasks. *Id.* She specified that only minor side effects could be expected from Plaintiff's prescribed medication. *Id.* She claimed Plaintiff's pain and side effects from medication were severe enough to limit effectiveness due to distraction, inattentiveness, drowsiness, etc. *Id.* She indicated Plaintiff's pain level might become less intense or less frequent in the future, but would still remain significant. *Id.* She noted Plaintiff's treatment had provided no appreciable impact and had only briefly reduced his pain level. *Id.*

C.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the hearing on April 28, 2016, Plaintiff testified that he had been terminated from his most recent job because he failed a drug test. Tr. at 51. He indicated he did not subsequently attempt to obtain a job because he was experiencing pain in his legs and throughout his body. Tr. at 52. He stated he was unable to work because of pain in his leg that was exacerbated by standing and walking. *Id.* He endorsed a need for a cane to ambulate. *Id.* He indicated his ability to work was further restricted by problems with his arm and hand that caused numbness and reduced grip. *Id.* He described pain and popping in his knees and stiffness in his shoulder. Tr. at 53–54.

Plaintiff testified that his pain was constant. Tr. at 52. He indicated his medication reduced his pain, but did not eliminate it. *Id.* He stated his pain woke him during the night. Tr. at 58. He indicated he typically slept for three or four hours. Tr. at 59. He

claimed his medication made him feel drowsy. Tr. at 56. He stated he used a hand brace and a cane that had been prescribed by a doctor. Tr. at 53 and 57–58.

Plaintiff estimated that he could stand for 45 minutes and sit for 20 to 30 minutes at a time. Tr. at 53. He claimed he could walk for 20 feet. *Id.* He stated he could lift a maximum of 10 pounds. *Id.* He denied being able to squat and bend. *Id.*

Plaintiff testified that he lived alone. Tr. at 48. He indicated his driver's license had been suspended for driving under the influence ("DUI") in 1987 and he had never had it reinstated. Tr. at 50 and 59. He denied preparing his own meals, doing laundry, and performing yard work. Tr. at 54. Plaintiff endorsed abilities to bathe and dress on his own and stated he did a little dusting. *Id.* He indicated his sister prepared his meals, did his laundry, and shopped for his groceries. Tr. at 54–55. He confirmed that he socialized with his family members on holidays, but denied socializing with friends and attending church. Tr. at 55. He indicated he went shopping and out for meals with his sister. *Id.* He claimed that he would collect his mail, socialize with a neighbor, and exercise during a typical day. Tr. at 57. He stated he occasionally used alcohol, but denied drug use. Tr. at 56.

b.    Vocational Expert Testimony

Vocational Expert ("VE") Robert E. Brabham, Sr., Ph.D., reviewed the record and testified at the hearing. Tr. at 61–66. The VE categorized Plaintiff's PRW as a hand packager, *Dictionary of Occupational Titles* ("*DOT*") number 920.587-018, as requiring medium exertion. Tr. at 63. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could lift and carry up to 50 pounds occasionally and 25 pounds

11

frequently; could frequently climb ladders, ropes, or scaffolds; could frequently kneel and crawl; and could frequently be exposed to moving machinery and unprotected heights. Tr. at 63–64. The VE testified that the hypothetical individual could perform Plaintiff's PRW as customarily performed and as defined by the *DOT*. Tr. at 64.

The ALJ next asked the VE to consider a hypothetical individual of Plaintiff's vocational profile who could lift and carry up to 50 pounds occasionally and up to 25 pounds frequently; could never climb ladders, ropes, scaffolds, ramps, or stairs; could frequently balance with a handheld assistive device; could frequently kneel and crawl; could frequently handle with the right hand; and could frequently be exposed to moving machinery and unprotected heights. Tr. at 64–65. He asked the VE if the hypothetical individual would be able to perform Plaintiff's PRW. Tr. at 65. The VE responded that the hypothetical individual could perform Plaintiff's PRW as described in the *DOT*. *Id.*

For a third hypothetical question, the ALJ asked the VE to consider the restrictions in the second question, but to further consider that the individual would be off task for 20 percent or more of the workday as a result of severe pain. *Id.* He asked if the individual would be able to perform Plaintiff's PRW. *Id.* The VE stated the additional restriction would eliminate all work. Tr. at 65–66.

Plaintiff's attorney asked the VE if an individual who would be off task for 10 percent of the workday could perform any jobs. Tr. at 66. The VE indicated the individual would be unable to maintain employment. *Id.*

2.      The ALJ's Findings

In his decision dated July 14, 2016, the ALJ made the following findings of fact

and conclusions of law:

1.      The claimant meets the insured status requirements of the Social Security
        Act through December 31, 2018.
2.      The claimant has not engaged in substantial gainful activity since June 1,
        2013, the alleged onset date (20 CFR 404.1571 *et seq.*).
3.      The claimant has the following severe impairments: left tibia and fibula
        fractures, status post ORIF, osteoarthritis, and carpal tunnel syndrome (20
        CFR 404.1520(c)).
4.      The claimant does not have an impairment or combination of impairments
        that meets or medically equals the severity of one of the listed impairments
        in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
        404.1525 and 404.1526).
5.      After careful consideration of the entire record, I find that the claimant has
        the residual functional capacity to perform medium work as defined in 20
        CFR 404.1567(c) except he can never climb ladders, ropes, scaffolds,
        ramps, or stairs; he can perform frequent balancing with a hand held
        assistive device; he can frequently perform kneeling or crawling; he can
        frequently handle with right upper extremity, use moving machinery, and
        be exposed to unprotected heights.
6.      The claimant is capable of performing past relevant work as a hand
        packager. This work does not require the performance of work-related
        activities precluded by the claimant's residual functional capacity (20 CFR
        404.1565).
7.      The claimant has not been under a disability, as defined in the Social
        Security Act, from June 1, 2013, through the date of this decision (20 CFR
        404.1520(f)).

Tr. at 32–37.

II.     Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)      the ALJ failed to identify and resolve a conflict between the VE's
        testimony and the *DOT*'s description of the job of hand packager: and

2)      the Appeals Council erred in failing to remand the case to the ALJ for
        consideration of new and material evidence.

13

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such

---

[1]  The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year,

impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from

---

he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the

Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

       B.     Analysis

          1.     Conflict Between VE Testimony and *DOT*

Plaintiff argues the ALJ erred in relying on the VE's testimony to support the existence of jobs he could perform. [ECF No. 11 at 17]. He maintains that his PRW as a hand packager is described in the *DOT* as requiring constant handling, but the ALJ limited him to frequent handling with the right upper extremity in the RFC assessment. *Id.* at 18. He contends that remand is required because the ALJ failed to address or resolve the conflict between the *DOT*'s job description and the VE's testimony. *Id.* at 17–18.

The Commissioner argues that there is no apparent conflict between the *DOT* and the VE's testimony. [ECF No. 12 at 7]. She maintains that Plaintiff's argument is based on the erroneous assumption that the job requires constant handling with both hands and references cases from the United States Courts of Appeals for the Third and Fifth Circuits and district courts in Hawaii, California, Illinois, and Pennsylvania. *Id.* at 8–9. She further contends that Plaintiff's return to work following his surgery, his indications to Dr. Broderick, and subsequent records support the ALJ's finding that Plaintiff was capable of performing his PRW. *Id.* at 9–10. She claims Plaintiff described his PRW as

only requiring occasional handling of objects, which would be consistent with a finding that he could perform his PRW as actually performed. *Id.* at 10.

Plaintiff argues in response that some of the cases the Commissioner cites may be differentiated from the instant case in that the courts found that the VEs explained the apparent conflict. [ECF No. 13 at 3–5]. He contends that the other cases the Commissioner cites are in conflict with SSR 00-4p and the holding of the United States Court of Appeals for the Fourth Circuit in *Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015). *Id.* at 5. He maintains that the ALJ specifically found that he could perform his PRW as generally performed and that he could not perform his PRW as actually performed because he had performed it at the heavy exertional level. *Id.* at 6.

"[T]he Commissioner bears the burden to prove that the claimant is able to perform alternative work." *Pearson*, 810 F.3d at 207, citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). In assessing the claimant's ability to perform specific jobs, the ALJ should take administrative notice of the information contained in the *DOT*. 20 C.F.R. § 404.1566(d); *see also* SSR 00-4p (providing that "we rely primarily on the *DOT* (including its companion publication, the *SCO*) for information about the requirements of work in the national economy"). In some cases, ALJs obtain testimony from VEs to address how certain restrictions affect claimants' abilities to perform specific jobs. 20 C.F.R. § 404.1566(e).

The SSA promulgated SSR 00-4p to explain how conflicts between VEs' opinions and the information in the *DOT* should be resolved. The Fourth Circuit has explained that the "purpose" of SSR 00-4p "is to require the *ALJ* (not the vocational expert) to

'[i]dentify and obtain a reasonable explanation' for conflicts between the vocational expert's testimony and the *Dictionary*, and to '[e]xplain in the determination or decision how any conflict that has been identified was resolved.'" *Pearson*, 810 F.3d at 208, citing SSR 00-4p (emphasis in original). The court noted that SSR 00-4p sets forth two independent responsibilities. *Id.* "First, the ALJ must '[a]sk the [vocational expert] . . . if the evidence he or she has provided conflicts with the information provided in the [*Dictionary*]'; and second, '[i]f the [vocational expert]'s . . . evidence appears to conflict with the [*Dictionary*],' the ALJ must 'obtain a reasonable explanation for the apparent conflict.[3]'" *Id.*, citing SSR 00-4p. "SSR 00-4p directs the ALJ to 'resolve the conflict by determining if the explanation given by the [expert] is reasonable'" and "to 'explain the resolution of the conflict *irrespective of how the conflict was identified*.'" *Id.*, citing SSR 00-4p (emphasis in original). Thus, "[t]he ALJ independently must identify conflicts between the expert's testimony and the *Dictionary*." *Id.* Furthermore, "an ALJ has not fully developed the record if it contains an unresolved conflict between the VE's testimony and the *DOT*" and is not absolved of his responsibility "if he ignores an apparent conflict on the basis that the VE testified that no conflict existed." *Henderson*, 643 F. App'x at 277, citing *Pearson*, 810 F.3d at 210.

The ALJ found that Plaintiff had the RFC to perform work at the medium exertional level that required no climbing and frequent balancing with a handheld assistive device, kneeling, crawling, handling with the right upper extremity, use of

---

[3] The court explained that an "apparent conflict" existed when the VE's testimony "appear[ed] to conflict with the *Dictionary*," but an explanation from the VE may show that no actual conflict exists. *Pearson*, 810 F.3d at 209.

moving machinery, and exposure to unprotected heights. Tr. at 35. He relied on the VE's testimony to find that Plaintiff could perform PRW as a hand packager. Tr. at 37. He indicated "in comparing the claimant's residual functional capacity with the physical and mental demands of this work, I also find that the claimant is able to perform it as it is generally performed." *Id.*

Pertinent to Plaintiff's argument the *DOT*'s description of the job of hand packager specifies "Handling: Constantly—Exists 2/3 or more of the time." 920.587-018, PACKAGER, HAND. *DOT* (4th ed., revised 1991), 1991 WL 684916. However, the ALJ limited Plaintiff in the RFC assessment to frequent handling with the right upper extremity. Tr. at 35. The *DOT* defines constant as existing two-thirds or more of the time and frequent as existing from one-third to two-thirds of the time. *DOT*, 1991 WL 688702. (2016). The VE's testimony that Plaintiff could perform the job of hand packager, despite a restriction to frequent handling with the right upper extremity, seems to conflict with the *DOT*'s description of the job as requiring constant handling.

The undersigned has considered the cases the Commissioner cites as indicating that a restriction with respect to one extremity does not conflict with the *DOT*. ECF No. 12 at 7–9, citing *Mitton v. Comm'r of Soc. Sec.*, 670 F. App'x 754, 755–56 (3d Cir. 2016); *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000); *Morris v. Astrue*, No. 12:1381, 2013 WL 210197, at *4 (C.D. Cal. Jan. 17, 2013); *McConnell v. Astrue*, No. 08:667, 2010 WL 1946728, at *7 (C.D. Cal. May 10, 2010); *Feibush v. Astrue*, No. 07-00244-BMK, 2008 WL 583554, at *5 (D. Haw. Mar. 4, 2008); *Diehl v. Barnhart*, 357 F. Supp. 2d 804, 822 (E.D. Pa. 2005); *Stromske v. Colvin*, No. 14-1243-CJP, 2015 WL 6750057,

at *5 (S.D. Ill. Nov. 5, 2015). This court is not bound by findings that the *DOT* does not require use of the bilateral extremities to perform relevant functions rendered by the Third and Fifth Circuit Courts of Appeals and district courts in California, Hawaii, Pennsylvania, and Illinois. In addition, the instant case is distinguishable from most of these cases because, unlike the VEs in *Mitton*, 670 F. App'x at 755–56, *Carey*, 230 F.3d at 146, *Morris*, 2013 WL 210197, at *4, *McConnell*, 2010 WL 1946728, at *7, *Diehl*, 357 F.Supp.2nd 821–22, and *Stromske*, 2015 WL 6750057, at * 5, the VE in the instant case did not explain that Plaintiff could compensate for deficits in the use of one hand by using the other hand. In those cases, the courts determined that the ALJs relied on the VEs' testimony after receiving explanations that resolved the apparent conflict between the RFC's restrictions and the *DOT*'s job descriptions. *See id.* In the instant case, the ALJ did not rely on an explanation from the VE that resolved the conflict because the VE did not provide one. *See* Tr. at 64.

The Fourth Circuit's decision in *Pearson* is on point and controlling as it pertains to a restriction to one extremity. In *Pearson*, 810 F.3d at 211, the Commissioner argued that a restriction to "occasional overhead lifting/reaching using the nondominant upper extremity" did not create an apparent conflict with the *DOT*'s job descriptions because the plaintiff could "frequently reach bilaterally in every direction but overhead, and can frequently reach overhead with one arm." The Court indicated "[a]lthough the *Dictionary* does not expressly state that the occupations identified by the expert require frequent bilateral overhead reaching, the *Dictionary*'s broad definition of 'reaching' means that they certainly may require such reaching." *Id.* Thus, it found that an apparent conflict

existed between the *DOT* and VE's testimony based on the comparison of the *DOT*'s definition to the limitations in the RFC assessment. *Id.* The court found remand necessary because the ALJ and the VE failed to resolve the apparent conflict. *Id.*

Applying the court's reasoning to the instant case, the *DOT*'s definition of handling could reasonably require constant bilateral handling. Therefore, an apparent conflict existed between the *DOT* and the VE's testimony because the *DOT*'s indication that the job of hand packager required constant handling does not align with the restriction to frequent handling with the right upper extremity. The ALJ erred in relying on the VE's testimony to support the existence of jobs without having elicited an explanation for and resolved the conflict between his testimony and the *DOT*'s job description. *See Pearson*, 810 F.3d at 208; SSR 00-4p.

The undersigned rejects the Commissioner's argument that the restriction to frequent handling with the right upper extremity was not supported by the record. The ALJ found that right carpal tunnel syndrome was among Plaintiff's severe impairments and limited him to frequent handling with his right upper extremity. Tr. at 36. Because the ALJ conceded the severity of the impairment and found that it caused functional limitations, the court cannot accept the Commissioner's argument to the contrary. *See Cassidy v. Colvin*, No. 1:13-821-JFA-SVH, 2014 WL 1094379, at *7 n.4 (D.S.C. Mar. 18, 2014), citing *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").

The undersigned also rejects the Commissioner's argument that the ALJ's failure to resolve the conflict may be remedied based on Plaintiff's ability to perform his PRW as actually performed. The ALJ specifically noted that his finding was consistent with the VE's testimony that an individual with the restrictions indicated in the RFC assessment could perform Plaintiff's PRW as generally performed. Tr.at 37. In his testimony the VE stated that Plaintiff could perform his PRW as "[c]ustomarily performed and as defined by the *DOT*," but could not perform his PRW as actually performed because "[a]s [Plaintiff] describes some of his duties would have been heavy." Tr. at 64. Thus, the VE specifically noted that the assessed RFC would not allow the hypothetical individual to perform Plaintiff's PRW as actually performed because Plaintiff described it as requiring greater exertional demands than the *DOT* provided. *See id.* Because the ALJ limited Plaintiff to work at the medium, as opposed to the heavy exertional level, the assessed RFC would not allow Plaintiff to perform his PRW as he actually performed it.[4]

In light of the foregoing, the undersigned is constrained to recommend that the court remand the case for resolution of the conflict between the VE's testimony and the *DOT*'s definition of the job of hand packager.

2.     New Evidence Submitted to Appeals Council

Plaintiff presented the following evidence to the Appeals Council after the ALJ's unfavorable decision:

_____

[4] Because the record presents conflicting evidence regarding the exertional demands of Plaintiff's PRW as performed, the undersigned defers to the VE's interpretation of the evidence. *See* Tr. at 200 (indicating Plaintiff frequently lifted 50 pounds and lifted up to 100 pounds); 218 (claiming Plaintiff frequently lifted 20 pounds and lifted a maximum of 40 pounds).

A treatment note dated August 25, 2016, reflects Plaintiff's complaint of increased pain with ambulation and a request for an x-ray. Tr. at 11. Ms. Sanders observed that Plaintiff was ambulating with a limp, using a cane, and had 4/5 strength and trace edema in his left leg. *Id.*

Plaintiff underwent x-rays of his right shoulder and left ankle on October 4, 2016. Tr. at 13 and 14. The x-ray of his right shoulder showed early degenerative arthropathy of the acromioclavicular ("AC") joint with tiny calcified loose bodies or periarticular calcifications. Tr. at 13. His left ankle x-ray indicated a fractured screw in the distal tibia, but otherwise satisfactory alignment of the plate and screws in the distal tibia and fibula. Tr. at 14. It further showed chronic healed fracture deformities of the distal shafts of the tibia and fibula with a residual area of rarefaction in the distal shaft of the tibia, without bone destruction, erosion, or associated soft tissue mass; a tiny marginal osteophyte in the dorsal aspect of the talus; presumed os peroneus; and subtle narrowing of the posterior subtalar joint. *Id.*

A treatment note dated October 7, 2016, reveals Plaintiff's complaints of pain in his right shoulder and left ankle. Tr. at 9. Ms. Sanders noted that Plaintiff showed her a letter that indicated he needed to be evaluated by a physician every three months because he was attempting to obtain disability benefits. *Id.* She observed Plaintiff to be ambulating with a cane and stated he would benefit from disability benefits. *Id.*

A statement signed by David Keith, M.D. ("Dr. Keith"), and Ms. Sanders on November 18, 2016, states as follows:

Mr. Kenneth Glenn had a fracture of [his] distal tibia and fibula. X-rays show the fractures were well-healed in that the connection between the fractures were solid bone. But there are abnormalities at the end of the tibia that are consistent with pain on weightbearing. He also has some degenerative arthropathy of the right shoulder that should make frequent reaching and lifting a problem. Taking these two things together, he is going to have a hard time standing and walking. He is certainly limited to no more than light work from an exertional standpoint, that is, he should not lift more than 20 pounds occasionally, and he is limited to occasional standing and walking. He would have been so limited from the time his ankle was fractured.

Tr. at 8.

Plaintiff argues that the Appeals Council erred in failing to remand the case because the new evidence reasonably could have affected the fact finder's decision. [ECF No. 11 at 19 and 22–23]. He maintains that evidence dated after the ALJ's decision cannot properly be excluded merely because it was outside the relevant period. *Id.* at 21.

The Commissioner argues the Appeals Council appropriately considered the additional evidence in light of the evidence already in the record and properly found that it did not provide a basis to disturb the ALJ's decision. [ECF No. 12 at 12]. She maintains that the additional evidence submitted to the Appeals Council is not material because it is duplicative of the evidence already in the record. *Id.* at 12–13. She contends that the additional opinion from Dr. Keith and Ms. Sanders is not material because the ALJ considered an earlier opinion from Ms. Sanders and provided adequate reasons for rejecting it. *Id.* at 13. The Commissioner claims that the evidence submitted to the Appeals Council did not fill an evidentiary gap. *Id.* at 15. She emphasizes that a case should be remanded only if it was reasonably possible that the new evidence would

change the ALJ's ultimate decision, not just because it "might" have changed the outcome. *Id.* at 15–16.

A claimant may submit additional evidence that was not before the ALJ at the time of the hearing, along with a request for review of the ALJ's decision. *Meyer v. Astrue,* 662 F.3d 700, 705 (4th Cir. 2011), citing 20 C.F.R. § 404.967. However, the evidence must be both "new" and "material" and the Appeals Council may only consider the additional evidence "where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b) and § 416.1470(b) (effective Feb. 9, 1987 to Jan. 16, 2017). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer*, 662 F.3d at 705, *citing Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

If new and material evidence is offered and it pertains to the period on or before the date of the ALJ's hearing decision, the Appeals Council should evaluate it as part of the entire record. 20 C.F.R. § 404.970(b) and § 416.1470(b) (effective Feb. 9, 1987 to Jan. 16, 2017). After reviewing the new and material evidence and all other evidence of record, the Appeals Council will either issue its own decision or remand the claim to the ALJ if it concludes that the ALJ's "action, findings, or conclusion" was "contrary to the weight of the evidence." *Meyer*, 662 F.3d at 705, citing 20 C.F.R. § 404.970(b). However, if after considering all the evidence, the Appeals Council decides that the ALJ's actions, findings, and conclusions were supported by the weight of the evidence,

the Appeals Council will deny review and is not obligated to explain its rationale. *Id.* at 705–06.

"In reviewing the Appeals Council's evaluation of new and material evidence, the touchstone of the Fourth Circuit's analysis has been whether the record, combined with the new evidence, 'provides an adequate explanation of [the Commissioner's] decision.'" *Turner v. Colvin*, No. 0:14-228-DCN, 2015 WL 751522, at *5 (D.S.C. Feb. 23, 2015), citing *Meyer*, 662 F.3d at 707 (quoting *DeLoatche v. Heckler*, 715 F.3d 148, 150 (4th Cir. 1983)). After reviewing new evidence submitted to the Appeals Council, the court should affirm the agency's decision where "substantial evidence support[ed] the ALJ's findings." *Id.*, citing *Smith v. Chater*, 99 F.3d 635, 638–39 (4th Cir. 1996). However, if a review of the record as a whole shows the new evidence supported the plaintiff's claim and was not refuted by other evidence, the court should reverse the ALJ's decision and find it to be unsupported by substantial evidence. *Id.*, citing *Wilkins v. Secretary, Department of Health and Human Services*, 953 F.3d 93, 96 (4th Cir. 1991). If the addition of the new evidence to the record does not allow the court to determine whether substantial evidence supported the ALJ's denial of benefits, the court should remand the case for further fact finding. *Id.*

The Appeals Council "looked at" the evidence summarized above, but found that the information was "about a later time" and did not affect the decision about whether Plaintiff was disabled prior to July 14, 2016. Tr. at 2; *see also* Tr. at 8–14.

The undersigned agrees with the Commissioner's assessment that there was no reasonable possibility that the new evidence Plaintiff submitted to the Appeals Council

would have changed the ALJ's decision. Ms. Sanders's findings during examinations on August 25 and October 7, 2016, were essentially the same as her findings in treatment notes the ALJ reviewed. *Compare* Tr. at 9 and 11, *with* Tr. at 415, 429, 432, and 434. The x-ray of Plaintiff's left ankle was consistent with prior imaging studies. *Compare* Tr. at 14, *with* Tr. at 307, 347, 357, and 425. Although the record did not contain a prior x-ray of Plaintiff's right shoulder, its indication of early degenerative arthropathy of the AC joint was consistent with the ALJ's finding that Plaintiff had osteoarthritis of the right shoulder. *See* Tr. 33–34 and 36.

Unlike the prior opinion statements, the November 18, 2016 opinion bore Dr. Keith's signature in addition that of Ms. Sanders. However, in the absence of any indication that Dr. Keith had examined or treated Plaintiff, it was not reasonably likely that the ALJ would have given any greater weight to the opinion based on this factor alone. *See* 20 C.F.R. § 404.1527(c) (indicating factors relevant to the assessment of medical opinions). The ALJ considered and gave little weight to Ms. Sanders's prior opinions, finding that the restrictions she indicated were not supported by her observations that Plaintiff had full ROM in his right shoulder and strong grip strength and were inconsistent with imaging reports, observations from Dr. Broderick, and Plaintiff's ability to return to work without difficulty. Tr. at 37. A comparison of the November 18, 2016 opinion and the prior opinions shows similar restrictions. *Compare* Tr. at 8 (stating Plaintiff experienced pain with weight bearing and was limited to occasional standing and walking) with Tr. at 243 (indicating Plaintiff was unable to ordinarily walk 100 feet nonstop without aggravating an existing medical condition, including the increase of

pain); 431 (noting that Plaintiff's pain was present to such an extent as to be distracting to adequate performance of daily activities or work and that walking, standing, and bending increased Plaintiff's pain to such a degree as to cause distraction or total abandonment of tasks). Ms. Sanders had not indicated in prior opinions that Plaintiff was limited to light work and was unable to engage in frequent reaching and lifting, but a review of the ALJ's decision reveals that he rejected those restrictions. *See generally* Tr. at 35–37. The ALJ also rejected Ms. Sanders's opinion that the alleged restrictions related back to Plaintiff's injury, noting that Plaintiff had returned to work and had subsequently stopped working "due to a drug test and not due to an inability to perform his job." *See* Tr. at 37. Therefore, the undersigned would not recommend that the case be remanded merely for consideration of this evidence.

However, because of the undersigned's recommendation that the case be remanded for resolution of the conflict between the VE's testimony and the *DOT*'s job description and in light of Plaintiff's date last insured of December 31, 2018, the ALJ should address the evidence as part of his evaluation of the entire record on remand.

III.     Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of

42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

    IT IS SO RECOMMENDED.

November 15, 2017                            Shiva V. Hodges
Columbia, South Carolina            United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).